UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES AUSTIN,                )        Case No.  EDCV 08-0450-JTL
                                )
          Plaintiff,         )        MEMORANDUM OPINION AND ORDER
                                )
    v.                       )
                                )
MICHAEL J. ASTRUE,        )
Commissioner of Social Security,  )
                                )
                                )
          Defendant.      )
_____ )

**PROCEEDINGS**

On April 15, 2008, James Austin ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his application for continued Childhood Disability Insurance Benefits and Supplemental Security Income benefits.  On April 22, 2008, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  On July 29, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on November 10, 2008, defendant filed an Answer to the Complaint.  On January 13, 2009, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

**BACKGROUND**

Plaintiff filed a prior application for child's Supplemental Security Income on March 2, 1992.  (AR at 393).  Plaintiff was found disabled due to atypical psychosis and eligible for benefits as of March 1992.  (See Administrative Record ["AR"] at 20).  On February 4, 1994, plaintiff filed an application for Childhood Disability Insurance Benefits on the wage record of his mother.  (AR at 88-92).  In a decision dated September 29, 1994, the Social Security Administration ("SSA") determined that plaintiff had been disabled since March 1, 1992 due to atypical psychosis and Tourette syndrome.  (AR at 24; see AR at 20, 428).  On December 9, 1994, however, the SSA advised plaintiff he was only entitled to Childhood Disability Insurance Benefits as of January 1993.  (AR at 26-29).

On October 15, 2004, the SSA determined that there was medical improvement in plaintiff's condition and concluded that plaintiff's disability ceased as of October 2004.  (AR at 30-34).  Plaintiff appealed the SSA's determination through the hearing level (see AR at 396-420), and his appeal was denied by Administrative Law Judge ("ALJ") Joseph D. Schloss in a decision dated June 24, 2005.  (AR at 19-23).  In the decision, ALJ Schloss found that plaintiff had no severe impairment or combination of impairments, and determined that, as of October 15, 2004, plaintiff could perform work at the medium level of exertion.  (AR at 22).  Using Medical-Vocational Rule 203.28, ALJ Schloss concluded that plaintiff's disability ceased as of October 15, 2004.  (AR at 22-23; see AR at 55).  The Appeals Council denied plaintiff's request for review of ALJ Schloss's decision.  (AR at 6-8).

On July 21, 2005, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits.  (See AR at 428).  The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration.  (AR at 719-23, 725-29).  Thereafter, plaintiff requested a hearing before an ALJ.  (AR at 464).

On May 9, 2007, ALJ Mason D. Harrell, Jr. conducted a hearing in San Bernardino, California.  (See AR at 730-72).  Plaintiff appeared at the hearing with counsel and testified (AR at 734-35, 737-42, 744, 747-64, 770-72), as did David Glassmire, Ph.D, a medical expert (AR at 744-47), Sandra M. Fioretti, a vocational expert (AR at 767-69), and Sheryle L. Austin

Fischer, plaintiff's mother (AR at 742-43, 764-67).  On May 25, 2007, ALJ Harrell issued his decision denying benefits to plaintiff.  (AR at 428-39).  ALJ Harrell determined that plaintiff had no severe impairments and that plaintiff retained the residual functional capacity to perform basic work activities at any exertional level with no restrictions.  (AR at 431).  ALJ Harrell determined that plaintiff was not entirely credible and rejected plaintiff's statements concerning the intensity, persistence and limiting effect of his alleged symptoms.  (AR at 432-37).  ALJ Harrell concluded that plaintiff failed to rebut the presumption of continuing non-disability from ALJ Schloss's June 24, 2005 decision, and was not disabled at any time through the date of the decision.  (AR at 429, 438-39).  The Appeals Council denied plaintiff's timely request for review of ALJ Harrell's decision.  (AR at 421-23).

Thereafter, plaintiff appealed to the United States District Court.

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1.     ALJ Harrell failed to properly discuss the opinion of David Swope, M.D., an examining physician, regarding plaintiff's potential for rage attacks.

2.     ALJ Harrell misrepresented the record by omitting Dr. Swope's impression of plaintiff's rage attacks from the decision in order to support his own conclusions.

3.     ALJ Harrell failed to properly consider the impact of plaintiff's obesity on his other impairments, ability to work, and his general health.

4.     ALJ Harrell failed to properly evaluate plaintiff's credibility.

5.     ALJ Harrell failed to properly consider the lay witness testimony of Joanna Dill Bolinger, plaintiff's friend.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial

1    evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v.

2    Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

3        Substantial evidence is "such relevant evidence as a reasonable mind might accept as

4    adequate to support a conclusion." Richardson, 402 U.S. at 401.  This Court must review the

5    record as a whole and consider adverse as well as supporting evidence.  Morgan v. Comm'r,

6    169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to more than one rational

7    interpretation, the ALJ's decision must be upheld.  Robbins v. Soc. Sec. Admin., 466 F.3d 880,

8    882 (9th Cir. 2006).

9

10                       **DISCUSSION**

11    **A.**      **The Sequential Evaluation**

12        A claimant is disabled under Title II of the Social Security Act if he or she is unable "to

13    engage in any substantial gainful activity by reason of any medically determinable physical or

14    mental impairment which can be expected to result in death or . . . can be expected to last for

15    a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner

16    has established a five-step sequential process to determine whether a claimant is disabled.  20

17    C.F.R. §§ 404.1520, 416.920.

18        The first step is to determine whether the claimant is presently engaging in substantially

19    gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

20    in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S.

21    137, 141 (1987).   Second, the ALJ must determine whether the claimant has a severe

22    impairment.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment

23    is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the

24    impediment meets or equals one of the listed impairments, the claimant is presumptively

25    disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment

26    prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45

27    (9th Cir. 2001).  If the claimant cannot perform his or her past relevant work, the ALJ proceeds

28    to the fifth step and must determine whether the impairment prevents the claimant from

1    performing any other substantially gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.

2    2000).

3        The claimant bears the burden of proving steps one through four, consistent with the

4    general rule that at all times, the burden is on the claimant to establish his or her entitlement

5    to disability insurance benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is

6    established by the claimant, the burden shifts to the Commissioner to show that the claimant

7    may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir.

8    2006).

9    **B.    David Swope, M.D.**

10       Plaintiff argues that ALJ Harrell failed to properly consider the opinion of David Swope,

11   M.D., an examining physician.  (Joint Stipulation at 3-4).  Plaintiff also alleges that ALJ Harrell's

12   failure to discuss Dr. Swope's impression that plaintiff suffered from a "behavior disorder

13   consisting of rage attacks" was an intentional misrepresentation of the record made by ALJ

14   Harrell in order to support his conclusions.  (Joint Stipulation at 7).

15       In a Neurological Consultation dated July 2, 2004, Dr. Swope summarized his evaluation

16   of plaintiff's treatment for Tourette syndrome.  (AR at 371-73).  Dr. Swope summarized

17   plaintiff's complaints and noted that plaintiff reported that he was verbally and violently

18   destructive; has attacks during which he becomes violent,[1] blacks out, and has no recollection

19   of events; has tics including eye fluttering, turning of his neck to the left; and some voluntary

20   finger movements.  (AR at 371).  Dr. Swope noted that the neurological examination was

21   significant for no verbalizations, plaintiff's cranial nerves were normal, and no motor tics were

22   observed.  (AR at 372).  Dr. Swope also noted that plaintiff "initially walked quite slowly but

23   made his turns well.  However, when he left the room he walked with a normal stride."  (Id.).

24       Dr. Swope noted the following: (1) possible Tourette syndrome; (2) behavior disorder

25   consisting of rage attacks; and (3) diffuse pain.  (Id.).  Dr. Swope also noted that plaintiff has

26   an unusual history of Tourette syndrome:

27   _____

28       [1] Dr. Swope noted that plaintiff stated that he had his first "attack" at age 13.  During this "attack,"
     plaintiff "took control of some weapons and held some people at gunpoint."  (AR at 371).

1   [Plaintiff] has had some unusual episodes which he describes

2   as tics or at least in some way related to Tourette syndrome.

3   He apparently gets episodes of rage during which he loses his

4   sense of awareness.   These certainly are not typical for

5   Tourette syndrome.

6   (AR at 372).  Dr. Swope noted that plaintiff's "most significant problem is his behavioral

7   disorder."  Dr. Swope opined that it appeared to be under good control, but that "there is always

8   the potential for him to have more rage attacks."  (Id.).

9   As a preliminary matter, the Court notes that Dr. Swope's consultative report is dated

10  July 2, 2004 and was taken during the period when plaintiff was still receiving disability benefits.

11  Thus, Dr. Swope's report is of limited probative value to the period covered by plaintiff's instant

12  application.  Moreover, in the decision dated June 24, 2005, ALJ Schloss determined that

13  plaintiff's disability ended October 15, 2004 and, that after that time, plaintiff was able to work.

14  (AR at 19-23).  Thus, a presumption of nondisability exists after October 15, 2004, absent a

15  showing of changed circumstances, such as new and material changes to the claimant's

16  residual functional capacity, age, education, or work experience since the prior disability

17  determination.[2]  Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985); Chavez v. Bowen, 844

18  F.2d 691, 693-94 (9th Cir. 1988); see also Lester v. Chater, 81 F.3d 821, 827-28 (9th Cir.

19  1995); Lyle, 700 F.2d at 568 n.2.  Here, plaintiff has failed to make a showing of changed

20  circumstances sufficient to rebut the presumption of continuing nondisability.  Plaintiff testified

21  to and reported a history of "rage attacks" prior to ALJ Schloss's opinion, and continued to do

22

23  _____

24  [2] Although applied less rigidly to administrative than to judicial proceedings, the principles of res
    judicata do apply to administrative decisions.  Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988);

25  Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).  The res judicata doctrine serves two functions
    in social security cases.  First, an ALJ may apply "res judicata to bar reconsideration of a period with

26  respect to which she has already made a determination, by declining to reopen the prior matter.  As
    a general matter, the [ALJ]'s refusal to reopen her prior decision is not subject to judicial review."

27  Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) (emphasis in original).  Second, res judicata
    "creates a presumption that [the claimant] continu[es] to be able work to after [the date of the prior

28  decision]" and is not disabled.  Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985); see Lester, 81
    F.3d at 827; Lyle v. Sec'y, 700 F.2d 566, 568-69 (9th Cir. 1983).

1  so during the hearing before ALJ Harrell for the instant application.  (See AR at 734-35, 741,

2  750-52, 762).  This history does not constitute a new and material change to plaintiff's residual

3  functional capacity, age, education, or work experience since ALJ Schloss's determination that

4  plaintiff was no longer disabled as of October 15, 2004.  See Taylor, 765 F.2d at 875.  Dr.

5  Swope's July 2, 2004 impression that plaintiff suffered from a behavior disorder consisting of

6  rage attacks, and that plaintiff had the potential for more rage attacks is insufficient to establish

7  a changed circumstance.

8      Moreover, even if Dr. Swope's July 2, 2004 assessment was relevant to the instant

9  appeal, plaintiff has failed to establish that ALJ Harrell erred in his consideration of Dr. Swope's

10  opinion.  Contrary to plaintiff's allegations, ALJ Harrell did discuss Dr. Swope's assessment in

11  his decision.  ALJ Harrell noted that Dr. Swope conducted a neurological consultation for

12  treatment of Tourette syndrome on July 2, 2004.  (AR at 434).  ALJ Harrell further noted that

13  at the examination, plaintiff reported being verbally and violently destructive, and noted that

14  neurological examination did not reveal verbalizations.  (Id.).  ALJ Harrell also noted that during

15  the examination, plaintiff walked slowly, but afterwards, Dr. Swope observed plaintiff walking

16  with a normal stride.  (Id.).  ALJ Harrell noted that Dr. Swope did not witness any tics, and

17  stated that the described rage episodes were not typical for Tourette syndrome.[3]  (Id.).

18      Dr. Swope's statements regarding plaintiff's "rage attacks" were premised solely on

19  plaintiff's own statements.  Dr. Swope did not witness such an attack or find any evidence to

20  indicate that plaintiff was prone to such attacks.  In fact, Dr. Swope noted that plaintiff's "has

21  a very unusual condition" and noted that such attacks were "certainly not typical for Tourette

22  syndrome."  (AR at 372).  Where the record supports an ALJ's rejection of a claimant's

23  credibility as to subjective complaints, the ALJ is free to disregard a doctor's opinion that was

24  premised upon the claimant's subjective complaints.  Tonapetyan v. Halter, 242 F.3d 1144,

25  _____

26      [3] ALJ Harrell also discussed Dr. Swope's findings in support of his conclusion that plaintiff's
    Tourette syndrome was not severe.  (AR at 436).  ALJ Harrell cited to Dr. Swope's opinion that the
27  violent outbursts described by plaintiff are atypical for Tourette syndrome.  (Id.).  ALJ Harrell noted
    that plaintiff "has reported violent, angry outbursts, and he cannot recall his behavior during these
28  rages" and found that such behavior is not a sign of Tourette syndrome.  (Id.).

7

1   1149-50 (9th Cir. 2001) (ALJ properly rejected an examining physician's opinion because he

2   relied only on claimant's subjective complaints and on testing within the claimant's control); see

3   also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (an ALJ may properly reject all or

4   part of an examining physician's report if it contains inconsistencies, is conclusory, or

5   inadequately supported by clinical findings).  As discussed infra, in Section D, ALJ Harrell

6   properly rejected plaintiff's credibility.  Thus, ALJ Harrell was free to disregard the portion of Dr.

7   Swope's evaluation based on plaintiff's subjective complaints and did not err in his

8   consideration of Dr. Swope's evaluation, or his characterization of Dr. Swope's findings.  See

9   Tonapetyan, 242 F.3d at 1149-50; see also Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th

10  Cir. 1984) (in evaluating the medical evidence, the ALJ was not required to discuss every

11  treatment note).

12  **C.   ALJ Harrell Properly Considered The Effect Of Plaintiff's Obesity On His Other**

13  **Impairments, Ability To Work, And General Health**

14      Plaintiff argues that ALJ Harrell failed to properly consider plaintiff's obesity when making

15  the disability determination.  (Joint Stipulation at 8-11).  Plaintiff notes that in a Medical Report

16  dated September 28, 2004, Divakara Kedlaya, M.D., reported that plaintiff was 5'11 and

17  weighted 290 pounds, and stated that plaintiff was "obese."  (AR at 640).

18      Although obesity is not, standing alone, considered a listed impairment by the SSA, an

19  ALJ must nevertheless consider the effect of a claimant's obesity on his or her other

20  impairments, ability to work and general health.  Celaya v. Halter, 322 F.3d 1177, 1181 (9th Cir.

21  2003).  Social Security Ruling ("SSR")[4] 02-1p provides guidance for evaluating obesity in

22  disability claims and states that obesity, like other medical impairments, will be deemed a

23  "severe" impairment, "when alone or in combination with another medically determinable

24  physical or mental impairment(s), it significantly limits an individual's physical or mental ability

25  _____

26      [4] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's
    regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they
27  do not have the force of law, they are nevertheless given deference "unless they are plainly
    erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.
28  1989).

1   to do basic work activities." SSR 02-01p. In determining whether a claimant's obesity is a

2   severe impairment, an ALJ must "do an individualized assessment of the impact of obesity on

3   an individual's functioning." Id.; see Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).

4       Plaintiff argues that ALJ Harrell failed to properly consider Dr. Kedlaya's assessment of

5   plaintiff's obesity when evaluating plaintiff's other impairments, plaintiff's ability to work, and

6   general health. (Joint Stipulation at 8, 11). Specifically, plaintiff argues he is frequently

7   fatigued, has chronic and diffuse pain in multiple parts of his body, respiratory problems, and

8   chest discomfort due to obesity. (Joint Stipulation at 9, 11).

9       As a preliminary matter, the Court notes that Dr. Kedlaya's report dated September 28,

10   2004 predates the October 15, 2004 disability end-date assessed by ALJ Schloss. (See AR

11   at 19-23). However, the record contains similar assessments of plaintiff's weight after October

12   15, 2004, which ALJ Harrell discussed in his decision. ALJ Harrell noted that at the hearing,

13   plaintiff testified that he weighed 275 pounds and that his weight fluctuated between 275 and

14   300 pounds (AR at 433; see AR at 758-59), that the records from Loma Linda University

15   Medical Center show that plaintiff is "morbidly obese, and his weight fluctuates from 275 to 298

16   pounds on a 6' frame[,]" and that plaintiff had been treated for obesity. (AR at 433-34).

17   Moreover, plaintiff's treating physician, Jeffery Haga, D.O., also noted that plaintiff was

18   "clinically obese" in a treatment note dated February 6, 2006. (AR at 714).

19       At the May 19, 2005 hearing that ALJ Schloss conducted, plaintiff testified that he

20   weighed between 275 and 290 pounds and that he had weighed between 275 and 290 pounds

21   for the past 18 months. (AR at 408). Plaintiff testified that prior to that, he weighed between

22   200 and 240 pounds. (Id.). Plaintiff has made no showing of changed circumstances or offered

23   any evidence of his obesity's effect on his other impairments, ability to work, and general

24   health. Plaintiff's treating physician, Dr. Haga, did not opine that plaintiff's condition was

25   complicated by obesity or assess any functional limitations as a result of plaintiff's obesity. (AR

26   at 697-717). There is no evidence in the record showing that plaintiff's weight had a significant

27   effect on his body system or his other impairments. Plaintiff bears the burden of establishing

28   that he is unable to engage in any substantial gainful activity by reason of a medically

1  determinable physical or mental impairment  See 20 C.F.R. §§ 404.1512(a), (c); Meanel v.

2  Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving that she

3  is disabled.").  In the disability report forms completed by plaintiff on July 21, 2005 (AR at 490-

4  99), August 14, 2005 (AR at 505-12), and January 10, 2006 (AR at 530-37), plaintiff does not

5  mention his obesity or make any allegations of fatigue, chronic and diffuse pain in multiple parts

6  of his body, respiratory problems, or chest discomfort due to obesity.  Moreover, plaintiff did not

7  mention that his obesity, or any effects of his obesity, contributed to his inability to work.  At the

8  May 9, 2007, hearing conducted by ALJ Harrell, ALJ Harrell asked plaintiff what kept him from

9  finding a job; plaintiff replied that the fact that he tells his potential employers that he has

10  Tourette syndrome with a possibility of violent attacks keeps him from finding a job.  (AR at 734-

11  35).  Nor has plaintiff provided any evidence from medical sources to establish the effect of his

12  obesity on his ability to work on a sustained basis.  See 20 C.F.R. § 404.1512.

13       Plaintiff failed to establish that his obesity effected his other impairments, ability to work

14  and general health, and, therefore, ALJ Harrell properly concluded that "the record does not

15  show that [plaintiff's] weight has had a significant effect on his whole body system" and "the

16  record does not show that [plaintiff] has any debilitating or severe impairments as a result of

17  [his obesity]."  (AR at 433, 434).

18  **D.    Plaintiff's Credibility**

19       Plaintiff argues that ALJ Harrell failed to properly consider his complaints of pain and

20  functional limitations when making the disability determination.  (Joint Stipulation at 13-15).

21  Plaintiff alleges that ALJ Harrell discounted plaintiff's hearing testimony regarding his chronic

22  and diffuse pain and rage attacks, as well as his complaints to Dr. Kedlaya regarding his severe

23  pain, without providing clear and convincing reasons for doing so.  (Id.).

24       In the decision, ALJ Harrell summarized plaintiff's hearing testimony.  ALJ Harrell noted

25  that plaintiff testified that he had only worked once, and that was for three days when he was

26  16 years old.  (AR at 433; see AR at 734).  ALJ Harrell noted that plaintiff stated he was fired

27  because his medications and Tourette syndrome interfered with his job.  (Id.).  ALJ Harrell

28  noted that plaintiff testified as follows with regard to the symptoms and treatment of plaintiff's

Tourette syndrome and other conditions:

> [Plaintiff] is being treated for Tourette's and for depression. [AR at 740]. The medication helps, but he has motor and verbal tics, and he has violent verbal attacks. [AR at 740]. His verbal tics include cussing, yelling, and degrading people. [AR at 741]. His last psychiatric treatment was for three months in 1994 when he moved to Northern California. [AR at 747-48]. Before that, he was treated at other places. Since 1999, his treating physicians have just continued his medications because no one knows how to treat him. [AR at 748]. He takes 3 milligrams of Clonidine twice a day. [AR at 749]. He has tried other medications, but they do not help. He still has tic problems, including verbal outbursts. [AR at 750]. He was last violent with someone six months ago. [AR at 750-51]. In March 2007, he had a verbal attack against his teacher. [AR at 752]. He is allergic to chlorine, so chlorine in water makes him break out. [AR at 753]. . . . [Plaintiff] currently weighs 275, and his weight fluctuates between 275 and 300. [AR at 758]. He has sleep apnea and uses a CPAP machine. [AR at 759]. He has occasional sleep problems. He takes headache medications, but still gets headaches 1-2 times a week that last for 3-4 hours. [AR at 760]. He uses Benedryl on his arms. Since June 2005, his condition has worsened. [AR at 761-62]. He argues more with his mother, and he has more attitude. The tics are more often. The last time he was hospitalized in Ward B was during the early 1990s. [AR at 770].

(AR at 433). With regard to plaintiff's daily activities, ALJ Harrell noted that plaintiff testified that he is studying multimedia and game design at ITT in San Bernardino, and expects to graduate

1   in two years.  (AR at 433; <u>see</u> AR at 755-56).  ALJ Harrell noted that plaintiff testified that he

2   attended school from 6:00 p.m. to 10:30 p.m. every Tuesday for 12 weeks, that he also attends

3   school one day a week from 8:00 a.m. to 11:00 a.m., and that he participates in study groups.

4    (AR at 433; <u>see</u> AR at 771).  Plaintiff testified that his grade point last semester was a 4.0, that

5   he was maintaining a 3.6 grade point average, and that when he operates a computer he "can

6   shut down outside problems."  (AR at 433; <u>see</u> AR at 755-56).  Plaintiff testified that from 1997

7   to 2004 he learned web design, Power Point, Access, and Photoshop.  (AR at 433; <u>see</u> AR at

8   763-64).  ALJ Harrell also noted that plaintiff had a girlfriend and a baby, but presently does not

9   have a girlfriend.  (AR at 433; <u>see</u> AR at 758).  ALJ Harrell noted that plaintiff testified that the

10  child is three years of age and lives with his mother, and that plaintiff sends the child letters.

11  (<u>Id.</u>).

12          In evaluating a claimant's credibility, an ALJ must engage in a two-step analysis.

13  <u>Vasquez v. Astrue</u>, 547 F.3d at 1104-05.  "First, the ALJ must determine whether the claimant

14  has presented objective medical evidence of an underlying impairment which could reasonably

15  be expected to produce the pain or other symptoms alleged."  <u>Lingenfelter v. Astrue</u>, 504 F.3d

16  1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted).  The claimant is not

17  required to show that the impairment could reasonably be expected to cause the severity of the

18  alleged symptom; the claimant need only show that it could reasonably have caused some

19  degree of the symptom.  <u>Id.</u>  If the claimant makes this showing, and there is no evidence of

20  malingering, the ALJ can only reject the claimant's testimony about the severity of the

21  symptoms by giving "specific, clear and convincing reasons" for rejecting the claimant's

22  testimony.  <u>Id.</u>  An ALJ should consider the claimant's reputation for lying, prior inconsistent

23  statements concerning symptoms, any testimony by the claimant that appears less than candid,

24  unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

25  of treatment, and the claimant's daily activities.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir.

26  1996); SSR 95-5p.  When an ALJ assesses a claimant's credibility, as is the case here, "[t]hat

27  assessment must be given great weight."  <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir.

28  1990).

1    Here, ALJ Harrell found that plaintiff's medically determinable impairments could
2    reasonably be expected to produce plaintiff's alleged symptoms.  (AR at 432-36).  Thus, ALJ
3    Harrell must provide clear and convincing reasons for rejecting plaintiff's subjective testimony
4    regarding his symptoms.  See Smolen, 80 F.3d at 1282 (by requiring that the medical
5    impairment "could reasonably be expected to produce" pain or another symptom, the test
6    requires "only that the causal relationship be a reasonable inference, not a medically proven
7    phenomenon." (citations omitted)); Lingenfelter, 504 F.3d at 1036 (where the record includes
8    objective medical evidence establishing that a claimant suffers from an impairment that could
9    reasonably produce the symptoms of which he complains, an adverse credibility finding must
10   be based on clear and convincing reasons); see also Carmickle v. Comm'r, 533 F.3d 1155,
11   1159-61 (9th Cir. 2008).

12   ALJ Harrell provided clear and convincing reasons for rejecting plaintiff's subjective
13   complaints.   First, ALJ Harrell properly cited to the summary of a complete psychiatric
14   evaluation conducted on October 11, 2005, where the examiner found that plaintiff "was not
15   credible during the examination." (AR at 435; see AR at 597).  See Stubbs-Danielson v. Astrue,
16   539 F.3d 1169, 1175 (9th Cir. 2008).  ALJ Harrell noted that the examiner stated that plaintiff
17   "described in a fairly melodramatic fashion multiple serious 'disabilities' where there was no
18   evidence of these at all. [AR at 592].  [Plaintiff] did not fill out the psychiatric history portion of
19   [the] questionnaire because he stated 'there are too many' psychiatric hospitals to list . . . [but]
20   [w]hen asked in person, he admitted that he had not ever been hospitalized since [he] became
21   an adult."  (AR at 435; see AR at 592-93).  ALJ Harrell noted that the examiner observed that
22   plaintiff "seemed boastful" and noted that he claimed "multiple problems that were so severe
23   that he needed special care." (AR at 435; see AR at 595).  ALJ Harrell noted that "the examiner
24   also thought [plaintiff] attempted to be quite manipulative and did not see any evidence of his
25   claims." (AR at 435; see AR at 596).  ALJ Harrell noted that the examiner assessed a Global
26
27
28

1   Assessment of Functioning ("GAF")[5] of 90 (AR at 597), and concluded that plaintiff was not

2   credible (AR at 598) ("I don't believe that this claimant is credible at all in his claims.").  (AR at

3   435).  ALJ Harrell noted that the examiner concluded that plaintiff did not have any impairment

4   in his ability work, if he gave it a fair effort.  (AR at 435).

5        Second, ALJ Harrell noted that the record showed that plaintiff made multiple

6   inconsistent statements and appeared to exaggerate the extent of his limitations.  Conflicts in

7   a claimant's statements or testimony support a finding that the claimant lacks credibility.  Fair

8   v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).  While plaintiff claimed to require a wheelchair

9   (AR at 435, 598), ALJ Harrell found no medical justification for the use of a wheelchair or cane,

10  and noted that plaintiff is not using chronic or intensive pain medications.  (AR at 436).  ALJ

11  Harrell also noted that some medical examiners reported that plaintiff claimed to need a

12  wheelchair and observed plaintiff with a shuffled or severely antalgic gait during their

13  examinations, but then, when plaintiff was seen in the waiting room or elsewhere, the

14  examiners saw him walking normally.  (AR at 435, 436).  ALJ Harrell also found that plaintiff's

15  alleged limitations were inconsistent with plaintiff's medical treatment.  Specifically, ALJ Harrell

16  noted that while plaintiff claims he has Tourette syndrome, there is no evidence that plaintiff is

17  seen on a regular basis for any mental condition, including Tourette syndrome and violent

18  outbursts.  (AR at 435).  Moreover, ALJ Harrell noted that all examining doctors have reported

19  no observable tics or verbal utterances consistent with this condition, and that the violent

20  outbursts described by plaintiff are not a sign of Tourette syndrome.  (AR at 436).  ALJ Harrell

21  properly cited to these statements, where plaintiff appeared to be less than candid, in support

22  of the decision to discredit plaintiff's alleged limitations.  See Orn v. Astrue, 495 F.3d 625, 636

23  (9th Cir. 2007) (an ALJ may properly consider a claimant's reputation for truthfulness and

24  _____

25      [5]  "A GAF score is a rough estimate of an individual's psychological, social, and occupational
    functioning used to reflect the individual's need for treatment."  Vargas v. Lambert, 159 F.3d 1161,

26  1164 n.2 (9th Cir. 1998).  A GAF score between 81 and 90 indicates "[a]bsent or minimal symptoms
    (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide

27  range of activities, socially effective, generally satisfied with life, no more than everyday problems or
    concerns (e.g., an occasional argument with family members)."  Diagnostic and Statistical Manual of

28  Mental Disorders 34 (4th. ed, rev. 2000).

1  inconsistencies in a claimant's testimony or inconsistencies in a claimant's testimony and

2  conduct when evaluating a claimant's credibility).

3        Third, ALJ Harrell determined that plaintiff's daily activities are inconsistent with his

4  allegations of disability.  With respect to daily activities, the Ninth Circuit has held that a specific

5  finding that a claimant is able to spend a substantial part of her day engaged in pursuits

6  involving the performance of physical functions that are transferable to a work setting may be

7  sufficient to discredit a claimant's allegations of pain.  Vertigan v. Halter, 260 F.3d 1044, 1049

8  (9th Cir. 2001).  However, the Ninth Circuit has cautioned that "many home activities are not

9  easily transferable to what may be the more grueling environment of the workplace, where it

10  might be impossible to periodically rest or take medication."  Fair, 885 F.2d at 603.  Here, ALJ

11  Harrell noted that plaintiff currently attends school and expects to graduate in two years, and

12  noted that plaintiff "described a wide variety of activities of daily living during the consultative

13  psychiatric examination" including attending school regularly and maintaining a high grade point

14  average, participating in study groups, learning web design, and software applications.  (AR at

15  436, 433).  ALJ Harrell also noted that plaintiff's mother reported that plaintiff engaged in a

16  number of daily activities including making breakfast, doing the dishes, taking medication,

17  reading, using the computer, making lunch, staying out all day for doctor appointments, and

18  caring for a dog.  (AR at 437; see AR at 513-21).  The inconsistencies between plaintiff's

19  alleged functional limitations and his wide range of daily activities undermine plaintiff's

20  allegations that he is unable to work, and constitute an adequate ground upon which to reject

21  plaintiff's credibility.  See Vertigan, 260 F.3d at 1049.

22        Taken as a whole, ALJ Harrell's reasons for rejecting plaintiff's credibility are sufficiently

23  specific, and the decision to reject plaintiff's testimony regarding his inability to work is

24  supported by substantial evidence in the record.  See Morgan, 169 F.3d at 599; see also

25  Thomas, 278 F.3d at 959 (if an ALJ's credibility finding is supported by substantial evidence in

26  the record, a reviewing court may not engage in second-guessing).  Thus, ALJ Harrell did not

27  err in his consideration of plaintiff's subjective complaints.

28  ///

**E.  Lay Witness Testimony of Joanna Dill Bolinger, Plaintiff's Friend**

Plaintiff alleges that ALJ Harrell failed to properly consider the statements made by Joanna Dill Bolinger, plaintiff's friend, regarding plaintiff's functional limitations.  (Joint Stipulation at 19-22).  Plaintiff argues that ALJ Harrell's failure to discuss Ms. Bolinger's testimony in his decision constitutes reversible error.

In a third-party questionnaire dated July 10, 2004, Ms. Bolinger indicated that plaintiff spent his day engaged in a number of activities including taking care of his hygiene; taking care of his then two month old son; making single and multiple course meals, including breakfast and lunch daily, as well as dinner three to four times a week; housework, including dishes, vacuuming and laundry; reformatting computer systems for Ms. Bolinger; playing games and searching for things on the computer; and, on some days, helping his friends with the construction/remodeling of their home.  (AR at 136, 138).  Ms. Bolinger indicated that plaintiff prepared meals for his son, took care of his son's needs, did laundry, took care of the finances, and cared for pets.  (AR at 137).  Ms. Bolinger indicated that plaintiff went out every two to three days and is able to walk, use public transportation and ride in a car.  (AR at 138).  Ms. Bolinger also indicated that plaintiff stayed out all day when he went shopping once or twice a week.  (Id.).  With regard to plaintiff's social activities, Ms. Bolinger stated that plaintiff plays games on the internet with other people, talks on the phone, goes bowling twice a month, and attends San Bernardino Valley College Monday through Friday, without any accompaniment.  (AR at 140).  Regarding plaintiff's functional abilities, Ms. Bolinger indicated that pain in plaintiff's muscles and joints limit plaintiff's movements and his ability to lift and hold objects.  (AR at 141).  Ms. Bolinger indicated that plaintiff's Tourette syndrome makes it difficult for plaintiff to control his arms, hands and legs, and is the cause of plaintiff's slurred speech, inability to control his anger, and the reason plaintiff lives "in a fantasy world."  (Id.).  Ms. Bolinger indicated that plaintiff can walk a quarter of a mile and needs to rest for a half-hour to an hour before he can resume walking.  (Id.).  Ms. Bolinger indicated plaintiff could pay attention for 20 minutes, can follow written instructions very well, but doesn't always follow spoken instructions.  (Id.).  Ms. Bolinger indicated that plaintiff does not get along well with authority figures or handle stress

16

1   well, and "can't differentiate between real world and fantasy world of computer/internet role

2   playing games and other games." (AR at 141-42). In addition, Ms. Bolinger indicated that

3   plaintiff was prescribed crutches, a brace/splint, cane, glasses/contacts, a wheelchair, and

4   orthopedic shoes. (AR at 142). Ms. Bolinger indicated that plaintiff used the glasses,

5   brace/splint and orthopedic shoes at all times, and the cane and wheelchair occasionally as

6   needed. (Id.).

7       A social security claimant may provide evidence from other sources to show the severity

8   of his or her impairment and how the impairment affects his or her ability to work. 20 C.F.R.

9   § 404.1513(d). Other sources include, but are not limited to, nurse-practitioners, physicians'

10  assistants, therapists, educational personnel, social welfare agency personnel, relatives, friends

11  and clergy. Id. Here, Ms. Bolinger is properly categorized as an "other source" and the ALJ

12  may consider her opinion regarding the severity of plaintiff's impairment and how it affects his

13  ability to work. See 20 C.F.R. § 404.1513(d).

14      An ALJ must consider the testimony of a competent lay witness - a person who is in a

15  position to observe a claimant regularly and testifies regarding the claimant's symptoms and

16  ability to work. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Van Nguyen v. Chater, 100

17  F.3d 1462, 1467 (9th Cir. Cal. 1996). An ALJ may reject competent lay testimony by providing

18  reasons for doing so that are "germane to [the] witness." Greger v. Barnhart, 464 F.3d 968, 972

19  (9th Cir.2006) (internal quotation marks omitted). Silent disregard of competent lay witness

20  testimony is harmless if the reviewing court can confidently conclude that no reasonable ALJ,

21  when fully crediting the testimony at issue, could reach a different disability determination.

22  Stout v. Comm'r, 454 F. 3d 1050, 1056 (9th Cir. 2006).

23      Here, ALJ Harrell did not discuss Ms. Bolinger's testimony in the decision or provide any

24  reasons for rejecting Ms. Bolinger's testimony. Any error, however, that resulted from ALJ

25  Harrell's silent disregard of Ms. Bolinger's testimony was harmless, and cannot serve as the

26  basis for remand.

27      Ms. Bolinger's testimony regarding the severity of plaintiff's impairments and functional

28  limitations echoed and supported plaintiff's own subjective complaints, which ALJ Harrell

17

1    properly discredited.  See supra Section D.  Moreover, Ms. Bolinger's testimony regarding

2    plaintiff's functional limitations was inconsistent with her description of plaintiff's wide range of

3    daily activities, which included a range of housework, preparing meals daily, taking care of his

4    two-month old son, going out "all day" once or twice a week to shop, attending classes at San

5    Bernardino Valley College Monday through Friday without any accompaniment, going bowling

6    twice a month, and occasionally helping his friends with the construction/remodeling of their

7    home.  In fact, Ms. Bolinger described a wider range of daily activities than that provided by

8    plaintiff's mother, which the ALJ considered when assessing plaintiff's credibility.  (AR at 437).

9    Given that Ms. Bolinger's statements regarding plaintiff's limitations echoed plaintiff's own

10   subjective complaints and were inconsistent with her description of plaintiff's daily activities, no

11   reasonable ALJ could have reached a different disability determination based on Ms. Bolinger's

12   testimony.  See Stout, 454 F. 3d 1056.  Thus, any error resulting from ALJ Harrell's failure to

13   discuss Ms. Bolinger's testimony is harmless and cannot serve as the basis for remand.  See

14   Burch, 400 F.3d at 679 (a decision of the ALJ will not be reversed for errors that are harmless).[6]

15

16                                **ORDER**

17       After careful consideration of all documents filed in this matter, this Court finds that the

18   decision of the Commissioner is supported by substantial evidence and that the Commissioner

19   applied the proper legal standards.  The Court, therefore, AFFIRMS the decision of the

20   Commissioner of Social Security Administration.

21       **LET JUDGMENT BE ENTERED ACCORDINGLY.**

22   DATED: March 18, 2009

23                                _____/s/_____
                               JENNIFER T. LUM

24                                UNITED STATES MAGISTRATE JUDGE

25

26

27       [6] In addition, the Court notes that Ms. Bolinger completed the third-party questionnaire on July

28   10, 2004, during the period that plaintiff was still receiving benefits and the questionnaire is, therefore, of limited probative value to the application for benefits at issue in this appeal.